UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          **REPORT, RECOMMENDATION
                                                    AND ORDER**

v.                                                  12-CR-00200-RJA-JJM

JACK REID,

                                    Defendant.

_____

      Defendant Jack Reid is charged in a charged in a two-count Superseding

Indictment [83][1] with conspiracy to possess with intent to distribute, and to distribute cocaine, in

violation of 21 U.S.C. §846, and with possession with intent to distribute and distribution of

cocaine, in violation of 21 U.S.C. §841(a)(1) and  18 U.S.C. §2.  This case was referred to me by

Hon. Richard. J. Arcara for supervision of all pretrial matters.  *See* Judge Arcara's June 21, 2012

and August 26, 2013 [111] Text Orders.  Before me are Reid's pretrial motions: the first seeking

to suppress statements [104], and the second seeking discovery and dismissal of the Superseding

Indictment [116].

      Oral argument took place on September 24, 2013 [118].  A suppression hearing

was held on November 4, 2013 [133], at which DEA Special Agent ("SA") Mark Gentile

testified on behalf of the government.  Thereafter, the parties filed  post-hearing briefs  [136,

137].

      For the following reasons, Reid's motion for discovery is denied, and I

recommend that his motions to suppress statements and to dismiss the Superseding Indictment be

denied.

_____

[1]      Bracketed references are to CM/ECF docket entries.

**BACKGROUND**

Reid was initially charged in a two-count Indictment [25] charging him with violations of 21 U.S.C. §§846, 841(a)(1) and 18 U.S.C. §2.  Following his arraignment on July 5, 2012, a Scheduling Order [29] was issued setting a deadline of August 23, 2012 for the filing of any pretrial motions (id., ¶2).  When Reid failed to file any pretrial motions by that deadline, Judge Arcara held a conference on October 16, 2012 and scheduled jury selection to commence on December 11, 2012.  October 16, 2012 Minute Entry; November 7, 2012 Pretrial Order [45].  On November 26, 2012, the government filed a motion for a determination of a conflict of interest [47].  After resolution of this issue, Judge Arcara scheduled jury selection for July 9, 2013.  May 8, 2013 Pretrial Order [81].

On June 10, 2013 Reid was arraigned on the Superseding Indictment [83], which increased the amount of cocaine allegedly subject to the conspiracy from 500 grams to five kilograms or more, and  expanded the time frame of the alleged conspiracy  from "[b]eginning sometime prior to in or about June 2011. . . and continuing to on or about April 13, 2012" (Indictment [23], Count 1) to "[b]eginning sometime in or about 1990 . . . and continuing to on or about April 13, 2012".  Superseding Indictment [83], Count 1.  Notwithstanding the expansion of the conspiracy alleged in  the Superseding Indictment, Reid's retained counsel, Carl Dobozin, stated at the arraignment that he was prepared to proceed to trial on July 9, 2013.  Dobozin Affidavit [84], ¶III ("After receiving the superseding indictment, but before discussing the superseding indictment with my client, I agreed to not changing the trial date").  However, he

subsequently had second thoughts, moving on June 13, 2013 to adjourn the trial for at least 30

days, arguing that "additional time is needed to submit motions". Id., ¶¶II, IV.

Although Judge Arcara initially denied this motion (June 21, 2013 Text Order

[91]), on July 9, 2013 he adjourned jury selection to August 13, 2013, and permitted Reid to

make any further filings by July 26, 2013. July 9, 2013 minute entry. According to the

government, this deadline was set for the filing of "any motion in limine . . . based on [Mr.

Dobozin's] claim of needing to review with his client new information provided by the

government in its recent filings and the Superseding Indictment". Government's Response

[105], p. 4 (emphasis omitted).

Instead of filing a motion *in limine* based upon new information[2] or the expanded

conspiracy count of the Superseding Indictment, Reid filed a motion to suppress the statements

he made following his arrest on April 19, 2012  [103].[3]  At the August 8, 2013 oral argument of

Reid's suppression motion, he advised Judge Arcara that he had terminated Mr. Dobozin and had

retained J. Glenn Davis, Esq.  August 8, 2013 Minute Entry.  Judge Arcara granted the

substitution of counsel and referred the case back to me "pursuant to the terms of the June 21,

2012 Text Order of Referral".  August 26, 2013 Text Order [111].

I permitted Mr. Davis to file any additional motions by September 12, 2013, but

directed that any such motions "shall be accompanied by an explanation why these motions, as

---

[2]       As the  government notes,  its initial Witness List dated November 29, 2012 [55]
indicated that statements were obtained from Reid at the time of his arrest.  *See* Government's Response
[105], p. 3.

[3]       On July 29, 2013 Reid filed another motion to suppress [104], which supplemented the
initial motion to suppress [103] with a Notice of Motion.

well as defendant's motions to suppress [103 and 104], should be considered by the court and not

deemed waived".  August 27, 2013 Text Order [113].  Fours days after the September 12

deadline,[4] Mr. Davis filed a motion [115] seeking discovery and dismissal of the Superseding

Indictment.[5]


## ANALYSIS

### A.      Should Reid's Belated Motions be Considered?

 Fed. R. Crim. P. ("Rule") 12(e) states that "[a] party waives any Rule 12(b)(3)

defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any

extension the court provides. For good cause, the court may grant relief from the waiver". "A

district court may grant relief from an untimely motion upon a showing of: (1) cause for the

defendant's non-compliance, and (2) actual prejudice arising from the waiver." United States v.

Moore, __ Fed. Appx. __, 2013 WL 5529330,*1 (2d. Cir. 2013) (Summary Order), cert. denied,

January 6, 2014 (No. 13-8174).

 Although Reid's current counsel does not dispute that the pending motions [104,

116] are untimely, he attributes this to the ineffectiveness of prior counsel, Carl Dobozin: "I

could not see any strategic reason for the failure to file any motions . . . . Also, the defendant has

informed me that he had no discussions with [prior] counsel concerning the filing of motions or

---

 [4]     Mr. Davis explains that the combination of attending to a personal matter out of town
and computer difficulties prohibited him from meeting this deadline.  Davis Affirmation [116], ¶¶21-22.
Although I question why Mr. Davis did not seek an extension of the deadline, I accept his representations
and will consider the filing.

 [5]     After the initial motion was rejected by the Clerk's Office for missing an electronic
signature, Mr. Davis re-filed a corrected motion [116].

the reason for not doing so". Davis Affirmation [116], ¶16. "Counsel's failure to file motions following the filing of the Superseding Indictment, and his declaration of trial readiness at arraignment [on the Superseding Indictment], is frankly inexplicable . . . . I can think of no rational explanation why counsel would forego the opportunity to file motions given the vast expansion of the conspiracy, particularly since the charges would trigger mandatory minimum sentencing [if] convicted". Id., ¶18.

Although I suggested at oral argument that this explanation satisfied the "good cause" requirement of Rule 12(e), upon further consideration I question that conclusion. "[I]nadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause'" for a belated filing. United States v. Yousef, 327 F.3d 56, 125 (2d Cir.), cert. denied, 540 U.S. 933 and 540 U.S. 993 (2003). "[I]neffective assistance claims raised for the purpose of showing 'good cause' under Rule 12(e) are not ripe for review and are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. §2255 so that the parties can develop an adequate record on the issue". United States v. Onyekaba, 2011 WL 7473475, *4 n. 8 (N.D.Ga. 2011), adopted 2012 WL 763115 (N.D.Ga. 2012) (citing cases).

Nor is "the retention of new counsel . . . sufficient to establish good cause to justify relief from the waiver provisions of Rule 12(e)". United States v. Davis, 2011 WL 1743666, *4 (N.D.Iowa), adopted 2011 WL 1885529 (N.D. Iowa 2011). See also United States v. Trancheff, 633 F.3d 696, 698 (8th Cir. 2011) ("The desire to suppress incriminating evidence and the retention of new counsel are not by themselves sufficient to establish good cause to justify relief from a waiver of a defense, objection, or request under Rule 12").

However, even if the motions had been timely filed, for the reasons discussed below, I conclude that they lack merit.

**B.     Motion to Suppress Statements**

Reid moves to suppress the statements he made following his April 19, 2012 arrest on the grounds that he was not advised of his <u>Miranda</u> rights either before or during his interrogation.  Reid Affidavit [104], ¶4.[6]

SA Gentile testified at the suppression hearing that on April 18, 2012 he obtained an arrest warrant and search warrants for various premises belonging to Reid. November 4, 2013 hearing transcript [133], p. 4.  The following day at approximately 11:35 a.m., SA Gentile and his partner, SA Greg Yensan, were conducting surveillance in an attempt to effectuate the arrest warrant (<u>id</u>., pp. 4-5).  After Reid was observed departing his residence (at 58 The Commons in Williamsville, New York), SA Gentile activated his emergency lights and stopped Reid's vehicle (<u>id</u>., pp. 6, 19).  SA Gentile walked to the driver's side door of Reid's vehicle, identified himself to Reid and displayed his credentials (<u>id</u>., p. 6).  He then advised Reid that he had a warrant for his arrest arising from a narcotics investigation and directed him to enter the  back seat of his vehicle (<u>id</u>., pp. 6-7, 20).  SA Yensan arrived at the scene, and he and SA Gentile entered the

---

[6]     Reid's Notice of Motion ([104], p. 1 of 4) states that the motion is based upon the Affirmation of Mr. Dobozin, but no such document is included with the motion.  Instead, the Notice of Motion attaches an Affidavit from Reid, with the following title: "Motion to Suppress Incriminating Statement of Defendant; Delay in Bringing Defendant Before Magistrate; Alleged Unlawful Interrogation Without Advice of Rights; Use of Coercive Techniques" [104], p. 2 of 4.  While this may be interpreted as raising several grounds for suppression, Reid limits his arguments in his post-hearing brief to whether he was Mirandized and waived these rights.  Therefore, to the extent Reid's  Affidavit may have raised other grounds for suppression, I conclude that these arguments are waived.

front of the vehicle (id., pp. 7, 20, 24-25).  At that time, SA Gentile told Reid that he was under

arrest and read him his <u>Miranda</u> rights from a DEA Form 13-A <u>Miranda</u> Rights card (gov. ex. 1

[124]), which listed a series of rights followed by two questions:  "Do you understand?" and

"Are you willing to answer some questions?" (id., pp. 8, 21-22).

   After reading Reid each of his rights, SA Gentile asked Reid if he understood

those rights, to which Reid responded "Yes" (id., pp. 9, 44).  He then asked Reid  if he would be

willing to answer some questions (id., pp. 9-10, 44), and although he could not recall Reid's

exact response, he testified that Reid said "basically, no problem.  I understand" (id., p. 10).  On

cross-examination, SA Gentile testified that "[a]fter I asked him if he was willing to answer some

questions, he responded, yes" (id., p. 23).  SA Gentile also testified that he could not recall

whether Reid gave a response prior to this  question (id.).  On re-direct, SA Gentile testified that

Reid first acknowledged that he understood his rights and then indicated that he would answer

his questions (id., p. 44).

   At some point. SAs Gentile and Yensan pulled their vehicle into a nearby parking

lot and proceeded to question Reid for "maybe 30 minutes" (id., p. 10).  They continued to obtain

information from Reid concerning his involvement in cocaine trafficking throughout the rest of

the afternoon (id., pp. 10-11).  Reid accompanied the agents when they executed the search

warrants.  At 23 Sunrise Boulevard, he was "very helpful", giving the  agents his keys and

"point[ing] out where the money was hidden" (id., pp. 12, 35, 37).  SA Gentile believed that he

also provided assistance to other agents with their  search of 58 The Commons (id., pp. 12-13,

35, 37).

Eventually, Reid was brought to the DEA's office on Washington Street in Buffalo, where he continued to answer questions (id., p. 13).  At SA Gentile's request, Reid called Elliot Walker, who was also subject to an arrest warrant, in an effort to get him to turn himself in, and called his father to learn where Reid's source of supply was staying (id., pp. 14-15, 29-31, 38, 42, 44).

During his questioning, Reid never indicated that he wanted an attorney present or that he did not want to talk to SA Gentile (id., p. 15).  He appeared to understand the questions posed to him and his answers were responsive (id., pp. 15-16).  SA Gentile did not make any written notes during his questioning of Reid (id., p. 23).  At approximately 5:00 p.m., Reid was transported to the Amherst Police Department, where he was housed overnight (id., p. 16).   The next day, SA Gentile transported Reid to this Court for his initial appearance (id., p. 17).  At that time SA Gentile and Reid had "just small talk, nothing case related" (id.).

Although Reid did not testify at the suppression hearing, he submitted an affidavit in support of his motion to suppress [104], which gives a very different version of events.  He alleges that was arrested at his residence and then transported by two agents to the Amherst Police Department, where he was interrogated (id., ¶¶2-3).  He was then taken the next day to the DEA's office, where his interrogation continued (id., ¶7).  Reid states that he was not advised of his Miranda rights either before or during his interrogation, did not waive his right to have his attorney present during questioning, and "did not answer any questions nor make any statements" (id., ¶4).

The government bears the burden of proving Reid's "knowing and voluntary waiver of his Miranda rights . . . . by a preponderance of the evidence".  United States v. Male

Juvenile, 121 F.3d 34, 39 (2d Cir. 1997).  "To prove a valid waiver, the government must show

(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had

a full awareness of the right being waived and of the consequences of waiving that right." United

States v. Jaswal, 47 F.3d 539, 542 (2d Cir.1995).  "Only if the totality of the circumstances

'reveals both an uncoerced choice and the requisite level of comprehension may a court properly

conclude that the Miranda rights have been waived.'" Male Juvenile, 121 F.3d at 40 (*quoting*

Moran v. Burbine, 475 U.S. 412, 421 (1986)).

   Miranda "does not impose a formalistic waiver procedure that a suspect must

follow to relinquish those rights".  Berghuis v. Thompkins, 560 U.S. 370, 385 (2010).

 "An express written or oral statement of waiver of the right to remain silent or of the right to

counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary

or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979).  Although

"[t]he courts must presume that a defendant did not waive his rights . . . in at least some cases

waiver can be clearly inferred from the actions and words of the person interrogated". Id.  For

example, "[w]here the  prosecution shows that a Miranda warning was given and that it was

understood by the accused, an accused's uncoerced statement establishes an implied waiver of

the right to remain silent". Berghuis, 560 U.S. at 384.

   In determining whether Reid was Mirandized and knowingly and voluntarily

waived these rights, "this case turns, as many do, on the issue of credibility".  United States v.

Bayless, 921 F.Supp. 211, 213 (S.D.N.Y.1996). "It is within the province of the district court as

the trier of fact to decide whose testimony should be credited . . . . And as trier of fact, the judge

is entitled, just as a jury would be . . . to believe some parts and disbelieve other parts of the

testimony of any given witness."  Krist v. Kolombos Rest. Inc., 688 F.3d 89, 95 (2d Cir. 2012).

       Reid argues that Agent Gentile's "failure to recall vital facts concerning the giving

of Miranda rights and the alleged waiver of those rights" warrants suppression of his statements.

Reid's Post-Hearing Memorandum of Law [136], pp. 2-3 of 4.  Although there were some

variations in SA Gentile's testimony concerning Reid's waiver of his Miranda rights, having

observed his demeanor and considering his testimony as a whole, I find him to be credible and

accept  his testimony that he read Reid his Miranda rights and that Reid  verbally acknowledged

(in some form) that he understood these rights and was willing to answer some questions.

       By contrast, I give little weight to Reid's affidavit stating that he was not

Mirandized.[7] "Absent his live testimony and the opportunity for cross-examination, the Court

cannot assess his credibility or truthfulness. As a result, I credit the testimony of the live

witnesses over the contents of defendant's affidavit where a conflict exists." United States v.

Chisholm, 2008 WL 5453242, *2 (E.D.N.Y. 2008), adopted as modified, 2009 WL 299313

(E.D.N.Y. 2009); see also United States v. Romano, 2013 WL 5278420,*5  (E.D.N.Y. 2013).[8]

       Reid's reliance upon Tague v. Louisiana, 444 U.S. 469 (1980) (Reid's Post-

Hearing Memorandum of Law [136], p. 3 of 4) is unavailing. In Tague, "*no evidence at all* was

introduced to prove that petitioner knowingly and intelligently waived his rights before making

---

[7]       Reid does not allege that he involuntarily waived his  Miranda rights.

[8]       Curiously, Reid's Affidavit also states "I did not answer any questions nor make any statements".  [104], ¶4.  If this were so, there would be no statements to suppress.

the inculpatory statement".  Id. at 471 (emphasis added).  Here, by contrast, crediting SA

Gentile's testimony I conclude that the government has established by a preponderance of

 the evidence that Reid was Mirandized and voluntarily waived these rights before speaking to

the agents. Therefore, I recommend that Reid's motion to suppress statements be denied.


**C.     Motion to Dismiss the Superseding Indictment**

            Reid alleges  that he was arrested  by the City of Buffalo Police on April 19, 1990

and charged with Criminal Possession of a Controlled Substance.  Davis Affirmation [116], ¶11.

Following his guilty plea, he served  three years incarceration.  Id.  Reid argues that although "a

strong argument can be made that the defendant's incarceration effectively ended the conspiracy

and that the government's prosecution is barred by the statute of limitations, the problem is

getting this information before a jury" since "[t]here is a great risk that the jury . . . would convict

[him]" based upon the earlier conviction.  Id., ¶12.  Therefore, Reid "believes that the most

appropriate remedy is the dismissal of the indictment".  Id., ¶14.

            "Unless a conspirator produces affirmative evidence of withdrawal, his

participation in a conspiracy is presumed to continue until the last overt act by any of the

conspirators."  United States v. Leslie, 658 F.3d 140, 143 (2d Cir. 2011).  "Withdrawal . . .  starts

the clock running on the time within which the defendant may be prosecuted, and provides a

complete defense when the withdrawal occurs beyond the applicable statute-of-limitations

period."  Smith v. United States, __ U.S.___, 133 S.Ct. 714, 719 (2013).  The defendant bears

the burden of establishing withdrawal.  Id. at 720.

"[W]hile arrest or incarceration *may* constitute a withdrawal from a conspiracy, it does not follow that in every instance it *must* . . . . In the trial context, evidence of imprisonment during a conspiracy is merely a relevant fact that entitles the defendant to a jury instruction on withdrawal." Leslie, 658 F.3d at 144 (emphasis in original). *See* United States v. Massino, 546 F.3d 123, 137 (2d Cir. 2008), cert. denied, 556 U.S. 1175 (2009) ("Although arrest *may* constitute withdrawal, whether it does is a fact-dependent question" (emphasis in original)). Thus, whether Reid's "incarceration constitutes a withdrawal from the alleged conspiracy is a fact-dependent question that is not appropriate for a pretrial motion". United States v. Burke, 2011 WL 2609837, *5 (E.D.N.Y. 2011), aff'd, __Fed.Appx. __, 2014 WL 211423 (2d Cir. 2014) (Summary Order).

Although Reid also raises a double jeopardy argument, he inexplicably provides little detail of the underlying conviction. Accepting the government's undisputed characterization of Reid's conviction as "[a] singular state possession of drugs and a weapon" (government's Response [117], p. 3), I conclude that Reid's claim of double jeopardy must fail. "[I]t is well settled that substantive drug offenses and a conspiracy to commit those offenses are distinct offenses for double jeopardy purposes". United States v. Nunez, 2011 WL 112260, *3 (W.D.N.Y. 2011) (Skretny, J.) (*citing* United States v. Felix, 503 U.S. 378, 389 (1992)). *See* Norris v. Brown, 2011 WL 2490838, *5 (E.D.N.Y. 2011) ("admission into evidence of petitioner's previous conviction for possession of narcotics did not violate the prohibition against double jeopardy because it was relevant to the conspiracy charges, which required proof of an overt act in furtherance of the conspiracy, and petitioner's previous conviction for narcotics possession did not bar his prosecution for conspiracy"). Moreover, generally, "[t]he Double

-12-

Jeopardy Clause does not prohibit sequential prosecutions by different sovereigns, so a prior state

prosecution would not bar a later federal prosecution based on the same events". United States v.

Faison, __ Fed. Appx.__,  2014 WL 503072, *1 (2d Cir. 2014) (Summary Order).

    Therefore, Reid's motion to dismiss the Superseding Indictment should be denied.


**D.**   **Motion for Discovery**

    Reid seeks production of a number of exhibits identified in the government's

Third Revised Exhibit List [101]. Davis Affirmation [116], ¶6.  In response, the government

states that it provided  these exhibits to Mr. Dobozin. Government's Response [117],  p. 4.

Although these exhibits were not included in the materials Mr. Davis received from Mr.

Dobozin, the government  provided Mr Davis with another set of these exhibits at the September

24, 2013 oral argument.  Therefore, this motion is denied as moot.


<strong>CONCLUSION</strong>

    For these reasons, Reid's  motion for discovery  ([116], Point 1) is denied, and I

recommend that his motions to suppress statements [104] and to dismiss the Superseding

Indictment ([116], Point 2) be denied.

    Unless otherwise ordered by Judge Arcara, any objections to this Report,

Recommendation and Order must be filed with the clerk of this court by March 13, 2014

(applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)).  Any requests for

extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . .

-13-

waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

   Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

   The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

DATED:  February 24, 2014

       /s/ Jeremiah J. McCarthy
        JEREMIAH J. MCCARTHY
       United States Magistrate Judge