UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACK REID,

                              Petitioner,

        v.                                                    **DECISION AND ORDER**
                                                                 19-CV-691-A
                                                                 12-CR-200-A
UNITED STATES OF AMERICA,

                              Respondent.


        Before this Court are four motions filed by Petitioner Jack Reid, a prisoner in

federal custody.   The primary motion, filed *pro se* on May 28, 2019, is a Motion to

Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("§ 2255 Motion").

*See*, Dkt. # 274.[1]  For the reasons which follow, Reid's motions are denied.

## BACKGROUND

        The Court assumes familiarity with the facts and procedural history underlying

Reid's criminal conviction and will recount only those facts necessary to resolve those

issues raised in his pending motions.

### I.    Prior Proceedings

### The Charges:

        On June 6, 2013, a federal grand jury returned a two-count Superseding

Indictment against Reid. Dkt. # 83. Count 1 charged Reid with conspiracy to possess

---

[1] References herein, unless otherwise indicated, are to documents filed on this Court's
Docket in case 12-CR-200-A.  The three other motions, each related to Petitioner's
primary §2255 motion, are a motion to supplement the record (Dkt. # 277), a motion for
the appointment of counsel (Dkt. # 94), and  a motion for the appointment of counsel
and for an evidentiary hearing (Dkt. # 301).

with intent to distribute, and to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) and 21 U.S.C. § 846. *Id.* The conspiracy was alleged to have begun in or about 1990 and continued until on or about April 13, 2012. Count 2 charged that between on or about March 26, 2012, and on or about April 13, 2012, Reid knowingly, intentionally and unlawfully possessed with intent to distribute, and distributed, cocaine, a Schedule II controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Id.*

**The Trial:**

A jury trial commenced on April 8, 2014, and concluded on April 14, 2014, with the jury returning a verdict finding Reid guilty on both counts.

The evidence adduced at trial established that beginning in about 1990, Elliott Walker, Reid's younger cousin, began helping Reid sell $20 bags of cocaine in their neighborhood. T. 111-120.[2] Reid paid Walker for assisting him with his narcotics trafficking by giving Walker approximately $100-$200 per month and buying Walker sneakers. T. 119-120. Reid went to jail for roughly three years, but upon his release,[3] Reid and Walker continued selling cocaine together through the 1990s, with Reid supplying drugs to Walker. T. 121-124, 192.  While Reid was in jail, Walker continued to sell drugs on his own to customers using cocaine supplied to Walker by Reid. T.

---

[2] References preceded by T. are to pages in the trial transcript. The pages of the trial transcript are contained in five separately bound, consecutively paginated volumes which are filed on the Docket as Dkt. #186 (containing T. 1-228); #187 (containing T. 229-433); #188 (containing T. 434-527); #189 (containing T. 528-551); #190 (containing T. 552-563).

[3] According to his PSR, following the service of a New York State (NYS) sentence, Reid was released to NYS parole in January of 1994. PSR, ¶ 40.

122. When Reid was released from jail, Walker had some customers of his own, but the cocaine he sold them was supplied by Reid; Walker also continued to sell uncut product directly to Reid's customers at Reid's behest. T. 121-124, 130, 190-193.

Around 2008, the Reid enlisted Walker and Ronald Douglas (a/k/a Jezzy), to help him obtain cocaine from Reid's supplier, known by the nickname "Dimes," in Rochester, New York. T. 125-131, 200-202, 337, 339-344. Walker made between three and five trips for this purpose. T. 128, 205. Douglas made three trips to Rochester with Reid and Walker. T. 339-340. On each of three trips to Rochester, two kilograms of cocaine were obtained. T. 129, 340, 343, 344.

Beginning in about 2010 or 2011, Reid, Walker, and Douglas started traveling to New York City to obtain cocaine from the Reid's supplier in the Bronx, known as "Willie." T. 124-134, 139-140, 193, 346-356. Reid brought cocaine from the Bronx back to Buffalo in multiple kilogram quantities. T. 129-131, 135-136. Walker recalled that the conspirators made at least ten trips to New York City to obtain cocaine. T. 134. Douglas testified that the first four or five times, he would go down with Reid in one car, until he learned the route. T. 347. Thereafter, Reid would fly down and meet Douglas in New York City. T. 347. Delta Airlines passenger records revealed Reid took eight flights from Buffalo to JFK Airport between September 2010 and May 2011. T. 315-318; Gov't Ex. 71. After the cocaine was returned to Buffalo, Reid visited Walker's house where the cocaine was broken down. T. 136. Reid sold one kilogram of cocaine at that time for about $35,000. T. 149. By Douglas' estimate, the conspirators brought back around 20 kilograms of cocaine from New York City to Buffalo. T. 353.

3

Also beginning in or around 2011, Reid and his co-conspirators obtained multiple kilograms of cocaine at a time in Atlanta, Georgia, to sell in Buffalo. T. 142-145, 355-362. Reid and his co-conspirators bought cocaine in Atlanta from Reid's cousin, known to the conspirators as "Roomp." T. 143-145, 356, 365. Delta Airlines passenger records revealed that Reid took eight trips from Buffalo to Atlanta between June 2011 and March 2012. T. 315-318; Gov't Ex. 71. By Douglas' estimate, the conspirators brought back about 40 kilograms of cocaine from Atlanta to Buffalo. T. 377.

During that period, Walker was present when Reid provided Morgan Lewis cocaine in September 2011. T. 152, 262-263. On that occasion, Lewis was paid a "big eight" of cocaine which Reid represented to be worth at least $4,000 in exchange for work he completed on one of Reid's properties. T. 262-263. Drug Enforcement Administration ("DEA") Special Agent ("SA") Mark Gentile testified that Lewis made a controlled buy from Reid in October 2011 for 8.8 grams of cocaine which was paid for with $300 in DEA funds. T. 41-43. Thereafter, in November 2011, Reid referred Lewis to Walker and Lewis purchased 29.9 grams of cocaine from Walker in exchange for $1,200 in DEA funds. T. 45-49, 154-155. In 2012, Reid and Lewis (with Walker present) discussed Lewis making trips to Atlanta to purchase cocaine, and described Lewis as the perfect person to drive, because "he was a white guy, and [they would] put a suit on him." T. 159-160, 265, 310.

Reid also introduced Walker to Carl Rosso. T. 163-164. Rosso testified he had known Reid for over 20 years and had a conversation with him about acquiring narcotics in March 2012 at the behest of the DEA. T. 233-234, 236-237. Rosso went

to Reid's house in March 2012 and met with Reid and Walker. T. 235. Subsequently, following the drug discussions in March 2012, Rosso received a call from Reid indicating he was at Rosso's house to deliver, and had delivered, a half kilogram of cocaine. T. 241-242. Reid also arranged for Rosso to give Walker $20,000 in payment for the delivery. T. 166, 251. Rosso later paid Reid $7,500 in DEA funds, as partial payment on the $20,000 owed, after a recorded telephone call with Reid. T. 250-256. During the conversations, Reid identified his partner (Douglas), as a "young guy, 31, smart dude, owns ten houses, had money but didn't have a source." T. 256.

Reid was arrested by the DEA on April 19, 2012, and, after being read his *Miranda* warnings, he admitted to SA Gentile that he had been distributing cocaine since the mid-1990s. T. 67, 94. Reid stated he had obtained kilograms of cocaine in Atlanta. T. 95. Reid stated that he was involved with Walker and an individual named "Roomp" in obtaining kilograms of cocaine from Atlanta. T. 68. Reid, at SA Gentile's request, called Walker to tell him he had been arrested and suggested that Walker should also surrender. T. 72. Reid also attempted to identify "Roomp" by calling his father who then provided information about "Roomp's" location. T. 72. Reid also told SA Gentile rental cars were used to transport the drugs from Atlanta to Buffalo. T. 99.

**Jury Instructions and Deliberations:**

Following summations, the Court instructed the jury as to the required elements for Counts 1 and 2, without objection. T. 471-521. As to Count 1, regarding the onset date of the conspiracy, the Court read from the indictment that the conspiracy began "in or about 1990, the exact date being unknown and continuing to on or about April

13, 2012." T. 495. There was no request for a multiple conspiracies charge, nor was one given.

While deliberating, the jury sent a note, marked as Court Exhibit 7, which read: "We need clarification on 'continuing to' as found in Count 1." T. 530. The parties and the Court considered the appropriate response to the question during a colloquy the next morning. T. 530-534. The Court instructed the jury:

> You have asked for clarification of the term, quote, continuing to, end of quote, in Count 1 of the indictment. In general, you may find there was a conspiracy during the timeframe charged in Count 1 of the indictment if you find that there were changes in either personnel by the termination, withdrawal, addition of new members or changes in the activates or both so long as you find that some co-conspirators continued to act for the duration of the conspiracy charged in Count 1 for the purpose charged in Count 1.
> Therefore, what you must do is determine in accordance with the instructions I have given you a question of fact whether the conspiracy charged in the indictment as, quote, beginning some time in or about 1990, the exact date being unknown and continuing to on or about April 13th, 2012, end quote, existed. If you find that it did, then you must then determine the nature of the conspiracy and whether the defendant participated as a member.
> You are to consider the instructions that have been given to you as a whole and you are not to emphasize anyone of my instructions over any of the others. That will be my response to the question. All right. Jury will return to the jury deliberation room.

T. 537-539. The government objected to the answer provided by the Court, noting that it was inconsistent with the prior instructions and specifically objected to the language relative to the "continuing to" term which indicated that the government was required to prove that "some co-conspirators continued to act for the duration of the conspiracy." T. 533, 535-537, 539.

Shortly thereafter, the jury sent a note, marked as Court Exhibit 13, which stated: "We are deadlocked on charge number 1. One juror will not change [his or her] vote. We are hung. We have a verdict on charge 2." The Court then gave a charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896). T. 539-543.

Following the *Allen* charge, there were jury notes requesting transcripts of Elliot Walker's testimony and a copy of Reid's arrest and incarceration records. T. 543-544. Following additional instructions, the jury produced another note. Court Exhibit 19 asked:

> Is "continue to act for the duration of the conspiracy" like a relay race where the baton is always moving or is it like a rainy day where it rains for a day but there are periods of time in the day where it is not raining, it rained all day?

T. 547. The Court discharged the jury for the weekend and advised them of its intent to respond to the question when court resumed the following Monday. T. 547-548. After the jury left the room, the district court and the parties discussed the note. T. 548-552.

When the trial resumed, the district court advised that the parties that it was going to give a response based on current Second Circuit conspiracy law as discussed in *United States v. Ortiz*, 395 F. App'x 722 (2d Cir. 2010), *United States v. Ramirez*, 482 F.2d 807, 816, 817 (2d Cir. 1983), and *United States v. Heimann*, 705 F.2d 662, 666, 667 (2d Cir. 1983). T. 555-556.  While the government had no objection to the proposed charge, Reid objected on the basis that the charge purportedly "ignore[d] the defense arguments if you have two people who conspire and you need

two for a conspiracy and at some period of time, one is either in jail or one is out of the country and our argument was that the conspiracy ended." T. 556-557.

Over Reid's objection, the district court instructed the jury:

> In the Court's earlier supplemental charged marked as Court Exhibit 12, your notes contracts [*sic*] a relay race in which a baton is always moving with a rainy day during which there are periods where it's not raining. The note has been marked as Court Exhibit 19.
>
> My earlier charge indicated generally, that you may find that there was a conspiracy during the timeframe charged in Count 1 of the indictment if you find there were changes in either personnel by the termination, withdrawal, additions of new members or changes in the activities or both so long as you find that some co-conspirators continued to act for a duration of the conspiracy charged in Count 1 for the purpose charged in Count 1.
>
> To further clarify, it's not essential that the evidence proves that the conspiracy charged in Count 1 of the indictment started and ended on specific dates in the indictment. It is sufficient if you find proof beyond a reasonable doubt that the conspiracy charged in Count 1 was formed, that is [sic] existed for some time around or within the dates set forth in the indictment for the purpose charged in Count 1, that the defendant participated as a member.
>
> Similarly, if you find the evidence does not prove beyond a reasonable doubt that the defendant participated in the conspiracy in Count 1, then you must acquit the defendant of the conspiracy charged.
>
> I remind you again that you are to consider the instructions that have been given to you as a whole and you are not to emphasize any of my instructions over any of the others. That is my instruction.

T. 558-559.

Subsequently, the jury returned its verdict of guilty on both counts. T. 559-560, 614-616. Further, the jury found the amount of the mixture and substance containing cocaine involved in the conspiracy under Count 1 was five kilograms or more. T. 560, 615.

**Sentencing**:

Prior to trial, the government filed an information pursuant to Title 21, United States Code, Section 851, which alleged that in the event of a conviction under either count of the indictment, Reid's 1991 conviction in New York State Court for violation of New York State Penal Law (NYSPL) §220.18-1 (Criminal Possession of a Controlled Substance in the Second Degree), would serve as the as the basis for increased punishment under such count. Dkt. # 33. Based upon that §851 Information, the PSR determined—and the Court found at sentencing—that the statutory mandatory minimum and maximum term for incarceration under Cout One, increased, pursuant to 21 U.S.C. §841(b)(1)(A), from 10 years to life, to 20 years to life.  Under Count 2, which had no statutory minimum, the maximum term of imprisonment was increased, pursuant to 21 U.S.C. §841(b)(1)(C), from 20 years to 30 years.  Dkt. # 310, ¶59. The PSR further determined—and the Court at sentencing found—that based on a total offense level (TOL) of 40, and criminal history category (CHC) of III, Reid was facing an advisory Guidelines term of imprisonment of 360 months to life. Dkt. # 249, p. 8.

On March 21, 2017, Reid was sentenced principally, on each count, to 300 months in the custody of the Bureau of Prisons, with the sentences to run concurrently. At sentencing, the Court noted that it was granting a downward variance below the advisory Guidelines range based upon Reid's age and health. *Id.*, at 20.

## II.    Post-Conviction Proceedings

### The Direct Appeal:

Following his conviction and sentence, Reid filed a direct appeal in the Second Circuit Court of Appeals challenging his conviction and sentence. As relevant here, Reid, on appeal, argued: (1) that this Court erred in failing to give multiple conspiracy instructions to the jury both as part of its initial instructions as well as in its supplemental instructions in response to a note from the jury; and (2) that his Court miscalculated the applicable Untied States Sentencing Guidelines ("Guidelines") range, by erroneously calculating the amount of drugs involved in Reid's relevant conduct and erroneously determining that he was a supervisor manager, thereby rendering his sentence procedurally unreasonable. *See*, 2d Cir. Docket, Case # 17-859, Dkt. # 26 (Appellant's Brief, filed August 9, 2017).  The Second Circuit rejected Reid's contentions, and on April 24, 2018, issued a summary order affirming Reid's conviction and sentence. *United States v. Reid*, 732 F. App'x 14 (2d Cir. 2018).[4]

### The Habeas Motion:

On May 28, 2019, Reid, *pro se*, filed the § 2255 Motion. Dkt. # 274.  While Reid identifies four different grounds for his motion, the first three each involve specifications of those ways in which he claims he was deprived of his right to the

---

[4] Since his appeal, Reid has also filed two *pro se* motions seeking compassionate release/reduction of his sentence pursuant to 18 U.S.C. §3582(c). See, Dkt. # 285, # 295.  This Court has denied those motions, and on December 15, 2022, the Second Circuit issued a summary order affirming this Court's motion recent denial of his motion for compassionate release. *United States v. Reid*, No. 21-2135-CR, 2022 WL 17684667 (2d Cir. Dec. 15, 2022).

effective assistance of counsel.  Reid's fourth claim alleges that his due process rights were violated by the information filed by the government pursuant to 21 U.S.C. § 851.

Specifically, as to his ineffective assistance of counsel claim, Reid first claims that, with respect to the conspiracy charged in Count 1 of the indictment, his trial counsel's failure: to request a statute of limitations jury instruction, to request a multiple conspiracy jury instruction, and to argue that the Court's supplemental jury instruction amended the indictment, rendered him ineffective. Reid's second claim of ineffective assistance of counsel pertains to his trial counsel's failure: to call certain witnesses, to allow Reid to testify, and to file a proper Rule 29 motion. Reid's third claim of ineffective assistance of counsel is predicated upon counsel's failure to file a pretrial motion to dismiss Count 2 of the indictment as defective. Finally, Reid claims that his due process rights were violated by the government's filing of an information pursuant to 21 U.S.C. §851.  Dkt. # 274. For the reasons which follow, this Court finds Defendant's arguments to be without merit.

## DISCUSSION

## I.   LEGAL STANDARD

### A.  Section 2255

Section 2255 permits a prisoner in federal custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in tension with society's strong interest in the

finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). "A petition for relief under Section 2255 shall only be granted for a constitutional error when the sentencing court lacked jurisdiction or when a miscarriage of justice arises due to an error of law or fact which created a fundamental defect." *Lopez v. United States*, 792 Fed. App'x 32, 35 (2d Cir. 2019) (citations omitted). Relief under Section 2255 is reserved "for prejudicial errors that are so grave, they result in a complete miscarriage of justice." *Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021) (internal quotation marks, brackets and citations omitted).

### B.  Ineffective Assistance of Counsel

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. at 687–88, 692–93 (1984)). The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (cleaned up).

"The determinative question at this step is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id*. at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the

adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Thomas*, 608 F.App'x. 36, 38 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 690).  As pertinent here, "failure to make a meritless argument does not rise to the level of ineffective assistance" of counsel. *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995), citing *United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir. 2009).  Likewise, defense counsel is not obligated to raise objections that under the circumstances would be frivolous.  *See*, *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005).

Should defendant clear this first hurdle by demonstrating ineffective performance by counsel, prevailing on a § 2255 petition then requires demonstrating actual prejudice from identified errors. *Harrington*, 689 F.3d at 129 (citing *Strickland*, 466 U.S. at 668, 687–88, 692–93). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Where, as here, defendant challenges sentencing, the prejudice prong mandates that petitioner show either that counsel's failings "suffice to undermine [ ] confidence in the outcome of [the] original sentencing," *Gonzalez v. United States*, 722 F.3d 118, 136 (2d Cir. 2013), or "would have changed ... the sentence imposed," *Strickland*, 466 U.S. at 700.

## II.     LEGAL ANALYSIS

### A.  Ineffective Assistance of Counsel

#### 1)  Ground One:

Reid's initial claim of ineffective assistance involves three interrelated claims each predicated upon his contention that the evidence at trial demonstrated that the conspiracy charged in Count 1 of the indictment was really two distinct conspiracies separated by the period in which Reid was incarcerated in the early 1990's.  Relying upon that contention, Reid argues that his counsel was ineffective by failing: (1) to request a statute of limitations instruction; (2) to request a multiple conspiracy instruction; and (3) to argue that the Court's supplemental jury instruction constructively amended the indictment.

Each of Reid's claims is premised upon his assertion that the trial evidence established two separate conspiracies—the first involving the period before Reid was incarcerated and the second involving the period following Reid's release from prison. According to Reid, any prosecution of him for the conduct underlying what he claims was the first conspiracy, which he maintains ended with his incarceration in the early-1990's, was barred under the statute of limitations. Relatedly, he argues that because the proof established the existence of distinct conspiracies, the jury should have been instructed on multiple conspiracies and the Court's supplemental conspiracy instruction to the jury resulted in a variance or constructive amendment of the indictment. Dkt. #274, pp. 10-16.

14

On direct appeal, Reid argued that the Court erred in refusing to provide a multiple-conspiracies jury instruction.   While the Second Circuit did not determine specifically whether he was entitled to such a charge, the Court held that "even if Reid were entitled to a multiple conspiracy instruction," Reid, having been indicted and tried alone,  "cannot establish substantial prejudice" from this Court's failure to provide such an instruction. *Reid*, 732 F. App'x at 16.

The  so-called "mandate rule" bars re-litigation of issues already decided on direct appeal. *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006); *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993). The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate, *see United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001), including claims in a Section 2255 proceeding when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate. *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009).

Here, since the Second Circuit has already determined that Reid cannot establish any prejudice based upon this Court's failure to provide the multiple-conspiracies instruction, his claim of ineffective assistance predicated on the failure to request such instruction is precluded by the mandate rule. Moreover, not only was his inability to establish prejudice fatal to the alleged jury instruction error he raised on direct appeal, *see*, *Reid*, 732 F. App'x at 16, that very same deficiency (*i.e.,* lack of

prejudice) undermines his ability to establish the two additional ineffective assistance of counsel claims relating to the jury instructions.

Reid's arguments that his attorney erred in failing both to request a statute of limitations instruction to argue that the supplemental instructions amounted to a variance or constructive amendment of Count 1 are both predicated on his contention that the government's proof established multiple conspiracies. Assuming *arguendo* that Reid could show that his counsel was deficient, he  must still demonstrate prejudice. *Strickland v. Washington*, 466 U.S. at 693-694. This requires more than showing "the errors had some conceivable effect on the outcome," but that the counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 693.  Here, Reid cannot establish that the errors he claims deprived him of a fair trial.  Indeed, the superseding indictment charged that Reid and others engaged in a conspiracy which began "sometime in or about 1990, the exact date being unknown, and continu[ed] to on or about April 13, 2012."  At trial, the evidence established that Reid sold cocaine both pre- and post-incarceration and that he engaged in those activities with at least one other participant, Walker, and others, with whom he was also consistently conspiring, from about 1990 through April of 2012.  The proof further established that such conduct continued at least until March of 2012 when Reid sold and delivered a half-kilogram of cocaine to a longtime drug associate who was cooperating with the DEA. T. 233-242. With the Superseding Indictment filed in June of 2013—well within the five-year statute applicable to

conspiracies, *see*, 18 U.S.C. § 3282, there was no error in counsel's failure to request a statute of limitations instruction.

Moreover, since the superseding indictment put Reid on notice of the core criminality to be proven against him, there was no prejudicial variance and no constructive amendment of the conspiracy charge against him.   "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995).   "Conspiracy is generally a continuing crime ... not complete until the purposes of the conspiracy have been accomplished or abandoned." *United States v. Eppolito*, 543 F.3d 25, 47 (2d Cir. 2008) (internal quotation marks and citations omitted). Where, as here, the government establishes that a conspiracy continued into the statute of limitations period, which for a conspiracy charge is five years, *see* 18 U.S.C. § 3282(a), a defendant can assert as an affirmative defense to the charge that he withdrew from the conspiracy before the start of the limitations period. *See Eppolito*, 543 F.3d at 48–49.  However, "resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law; more is required. Specifically, the defendant must not take any subsequent acts to promote the conspiracy ... and must not receive any additional benefits from the conspiracy." *United States v. Berger*,  224 F.3d 107, 118 (2d Cir. 2000) (citations omitted).  "'[T]he defendant must not take any subsequent acts to promote the conspiracy' or 'receive any additional benefits from the conspiracy.'" *Eppolito*, 543 F.3d at 49 (quoting *Berger*, 224 F.3d at 118).

Here, read as a whole, the Court's instructions accurately stated the law, and consequently, neither counsel's failure to request a charge that was not warranted nor to object to an error that did not occur, can hardly be considered error. *See, United States v. Jimenez*, 96 F.4th 317, 323 (2d Cir. 2024). Even if there was error, which there was not, in view of the overwhelming evidence of Reid's guilt as kilogram level drug trafficker who operated for decades—as established by the testimony of his coconspirators, by his own confession, and by the corroborative documentary evidence presented by the government at trial—Reid cannot show prejudice. "The prejudice inquiry is ... ineluctably tied to the strength of the prosecution's evidence. *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018). "[A] verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than 'a verdict or conclusion only weakly supported by the record.' " *Id*. (quoting *Waiters v. Lee*, 857 F.3d 466, 480 (2d Cir. 2017). "As a result, '[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.' " *Id*. (quoting *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)). Ultimately, "there can be no such thing as an error-free, perfect trial, and ... the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-509 (1983).

### 2) **Ground Two:**

Reid next claims that his trial counsel was ineffective by: (1) failing to call two witnesses who Reid claims would have provided testimony which would have

impeached government witnesses; (2) failing to allow Reid to testify on his own behalf; and (3) failing to file a proper Rule 29 motion. *See*, Dkt. # 274, pp. 22-29.

"It is well-settled that the decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *Coke v. Superintendent, Green Haven Corr. Facility*, No. 06-CV-811, 2010 WL 475274, at *7 (W.D.N.Y. Feb. 5, 2010) (citation, quotation marks, and alteration omitted). Accordingly, "[c]ourts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury. The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005) (second alteration in original) (citation and quotation marks omitted); *see also Eze v. Senkowski*, 321 F.3d 110, 129 (2d Cir. 2003) ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb."). Simply put, a court should not, "on a cold record[,] ... second guess" a decision not to call a witness "unless there is no strategic or tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir 1998). "Counsel's decision as to whether to call specific witnesses — even ones that might offer exculpatory evidence — is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (citations and internal quotation marks omitted).

"In order to prevail on a claim of ineffective assistance of counsel based on a lawyer's failure to call certain witnesses, the petitioner must establish what these

witnesses would have testified to, and, equally as important, that they would in fact have testified." *Marcus v. United States*, No. 14-CV-5780 ARR, 2015 WL 3869689, at *12 (E.D.N.Y. June 22, 2015). Here, Reid has not provided competent evidence, beyond his own unsworn and self-serving representations, establishing that the witnesses would have testified or what they would have said. For this reason alone, petitioner has failed to establish that trial counsel was ineffective in failing to call the witnesses. However, even assuming petitioner's assertions are credible, he has failed to establish either (1) that trial counsel did not have any strategic reasons for not calling the proposed witnesses, or (2) that any error committed by trial counsel was prejudicial.  In view of Reid's own post-arrest admissions regarding his decades-long involvement as a drug trafficker and the other evidence presented by the government at trial, any negligible impeachment that the witnesses identified by him at trial regarding whether he and another coconspirator ever brought drugs to a particular house or whether another witness knew one of Reid's coconspirators or ever transported drugs with another coconspirator, Reid cannot establish prejudice.

Concerning Reid's assertion that his attorney "would not allow him to testify," *see*, Dkt. #274, p.25, there is no question but that "a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "[T]he decision whether to testify belongs to the defendant and may not be made for him by defense counsel." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997). "Although counsel ... may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision

whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Id*. at 79. "[A]ny claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two-prong test established in [*Strickland*], for assessing whether counsel has rendered constitutionally ineffective assistance." *Id*.

Even if Reid could establish that his attorney was objectively unreasonable in refusing to allow him to take the stand, Reid has wholly failed to satisfy the subjective prong of *Strickland*. Not only does Reid fail even to suggest about what facts he might have testified, in view of the post-arrest, post-*Miranda* statement he provided to SA Gentile regarding his decades-long involvement as a kilogram level cocaine dealer (T. 67-73),  this Court concludes "that there is no reasonable probability that the result of the proceeding would have been different if [Reid] had testified."  *Williams v. United States*, No. 6:16-CR-06014 EAW, 2023 WL 8655690, at *4 (W.D.N.Y. Dec. 15, 2023).

Lastly, while Reid contends that his attorney failed to make a Rule 29 motion at the close of proof, the trial transcript belies Reid's claim and reveals that at the close of the government's case, defense counsel did, in fact, ask for dismissal of Count 1 of the Indictment on the ground that it, in fact, charged Reid with multiple conspiracies. (T. 426-427).  The Court denied the motion. (T. 428).  As Reid's motion papers reveal, however, his real challenge is directed at the sufficiency of the evidence. (Dkt. #274, pp. 20-21 [Subheading "C. Sufficiency of Evidence"]).  Such argument is procedurally defaulted because Reid has failed to demonstrate cause for

failing to raise any such arguments on direct review and actual "prejudice" or actual innocence. *See Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) ("In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error.").  As Reid has not established either cause or prejudice, his claim lacks merit.

**3) <u>Ground Three</u>:**

Reid next asserts that Count 2 of the Superseding Indictment, which charged him with violation of Title 21, United States Code, Section 841(a)(1), was insufficient—and his attorney was ineffective for failing to challenge it—"[b]ecause the Government failed to put any specific overt acts or any details in the language to Count 2." Dkt. #274,  p. 29.  His contention is frivolous.

Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The Second Circuit in *United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992), detailed the requirements for an indictment:

> An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events. . . . We have often stated that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.

952 F.2d at 693 (citations omitted); *see also De Vonish v. Keane*, 19 F.3d 107, 108-09 (2d Cir. 1994) (same).

Count 2 of the Superseding Indictment reads as follows:

> Between on or about March 26, 2012, and on or about April 13, 2012, in the Western District of New York, and elsewhere, the defendant, JACK REID, did knowingly, intentionally and unlawfully possess with intent to distribute, and distribute, a quantity of a mixture and substance containing cocaine, a Schedule II controlled substance. All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

"It is well settled that 'an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). This indictment does that.  It "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." *Id.* (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). As such, it is sufficient.

### B. Due Process Violation

Finally, Reid claims that he suffered a due process violation by the virtue of the government's filing of an information pursuant to 21 U.S.C. §851, which alleged that in the event of a conviction under either count of the indictment, Reid's 1991 conviction in New York State violation of NYSPL §220.18-1 (Criminal Possession of a Controlled

Substance in the Second Degree), would serve as the as the basis for increased punishment under such count. Dkt. # 33.  Specifically, Reid asserts that the Supreme Court's June 23, 2016, decision in *Mathis v. United States*, 579 U.S. 500 (2016), precludes the finding that his New York state conviction might properly serve as the basis for enhanced penalties as a result of his convictions under Count 1, pursuant to 21 U.S.C. §841(b)(1)(A), and Count 2, pursuant to 21 U.S.C. §841(b)(1)(C).  In *Mathis*, the Supreme Court clarified and affirmed the existing analytical approach to determine whether an offense constitutes a "violent felony," for which prior convictions carry a mandatory minimum under the Armed Career Criminal Act (ACCA). Under that rule, the "categorical" approach, a past crime can serve as an ACCA predicate only if its elements are the same as or narrower than the elements of the generic version of the listed offense. *Id*. at 503.

In ruling on a Section 2255 motion, this Court must construe a *pro se* petitioner's submissions liberally and interprets them "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citations omitted). Here, and although Reid fails to develop the issue, it appears that his argument is predicated on the potential interplay between the *Mathis* decision and the December 21, 2018, enactment of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Specifically, Section 401 of the First Step Act changed the requirements for an enhanced sentence under § 841(b)(1)(A). First Step Act § 401, 132 Stat. at 5220-21. Before December 21, 2018, and as was alleged by the government in this case, § 841(b)(1)(A) authorized enhanced penalties for any person who committed a

violation of § 841(a)(1) if that person had a "prior conviction for a felony drug offense that ha[d] become final." *Id*. A "felony drug offense" meant "an offense that is punishable by imprisonment for more than one year under any law of the United States ... that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

The First Step Act, however, changed § 841(b)(1)(A) to provide for enhanced penalties for a person who committed a violation of § 841(a)(1) by changing the requisite prior conviction from one for "a felony drug offense" to one for "a serious drug felony." First Step Act § 401(a)(2)(A), 132 Stat. at 5221.[5]

The First Step Act further defined a "serious drug felony" as "an offense described in section 924(e)(2) of Title 18 for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57) (the second subsection (57)—there are two). The offenses described in 18 U.S.C. § 924(e)(2)(A) include: (i) "an offense under the Controlled Substances Act (21 U.S.C. § 801 et seq.)…; or (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance, … , for which a maximum term of imprisonment of ten years or more is prescribed by law." *See*, 18 U.S.C. § 924(e)(2)(A)(i) and (ii).  The

---

[5] Notably, the penalty provision applicable to Reid's conviction under Count 2, *i.e.,* 21 U.S.C. § 841(b)(1)(C), was <u>not</u> altered by the First Step Act.  That statute continues to provide for an increase in the statutory maximum penalty from 20  to 30 years where defendant has a final "prior conviction for a felony drug offense."

First Step Act applied the foregoing changes to § 841(b)(1)(A) retroactively to offenses committed before the new law was enacted on December 21, 2018, *if the defendant had not been sentenced by that date*. First Step Act § 401(c), 132 Stat. at 5221 (emphasis supplied).

Since Reid had already been sentenced by the time the First Step Act was enacted, the portion of the Act's provisions which arguably implicate *Mathis*—*i.e.,* the change in definition of a qualifying offense under § 851 from "a felony drug offense" to one for "a serious drug felony"—may <u>not</u> be applied retroactively to him. Even if they could, however, Reid's inability to establish prejudice renders his claim meritless.

The government correctly argues in opposition that Reid never raised this argument on direct appeal, despite his appellate brief being filed on August 9, 2017— over one-year ***after*** the Supreme Court decided *Mathis*. *See*,  2d Cir. Docket, Case # 17-859, Dkt. # 26.   Having failed to raise such claim on direct appeal, Reid is barred from raising such claim now.

> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."

*Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (citations omitted). Here, Reid does not address his failure to raise this issue on direct appeal, let alone any cause and prejudice—or actual innocence.

Reid cannot establish prejudice because his sentence was not affected by the filing of the § 851 information under Count 1.  Under that count, Reid, based upon the

drug quantity alleged therein and found by the jury beyond a reasonable doubt, faced a statutory mandatory minimum term of incarceration of 10 years and a maximum of life imprisonment.  The filing of the § 851 information ostensibly ensured Reid could not be sentenced below a mandatory minimum of 240 months' imprisonment. However, Reid's Sentencing Guidelines range for imprisonment as found by the court at sentencing was 360 months to life.  In imposing the 300-month sentence that it did, such sentence was a full 60 months (5 years) higher that the mandatory minimum sentence triggered by the § 851 information under Count 1.  Reid's Sentencing Guidelines range would have been the same with or without the § 851 information. Therefore, had Reid challenged the conviction used by the government in the § 851 information under Court 1, it would not have impacted Mr. Smith's sentence at all. He would still have been subject to a Sentencing Guidelines range of 360 months to life. Dkt. # 249, p. 8.

In view of the foregoing, Reid  cannot show prejudice based upon any alleged deficiency in the § 851 information. *United States v. Cox*, 458 F. App'x 79, 82 (2d Cir. 2012)(no prejudice, where Court imposes its sentence without regard to the mandatory minimum); *see also United States v. Deandrade*, 600 F.3d 115, 120 (2d Cir. 2010) (holding that purported calculation error in mandatory minimum was harmless because challenged sentence was 60 months longer than presumed minimum and was imposed according to Guidelines without reference to statutory minimum); *United States v. Chatman*, No. CR 08-659, 2015 WL 9315982, at *5-6 (E.D. Pa. Dec. 23, 2015) (although Court erred in stating that defendant was subject

to a ten-year mandatory sentence since § 851 notice in that case only had the effect of increasing the statutory maximum penalty on both drug counts from 20 to 30 years, "[t]he Court's error, however, had no effect on the sentence ultimately imposed…[b]ecause [defendant] was determined to [have a]…Guidelines range [which] was…well above the ten-year mandatory minimum the Court erroneously believed applied….[Therefore,] "[b]ecause [defendant] had made no showing of prejudice, his claim regarding the § 851 notice will also be denied"); *see also, Smith v. United States*, No. 4:20-CV-04019-KES, 2020 WL 10054280, at *20 (D.S.D. Oct. 1, 2020), *report and recommendation adopted*, No. 4:20-CV-04019-KES, 2021 WL 1940816 (D.S.D. May 14, 2021)(where the challenge to the § 851 information would not have impacted sentence imposed, defendant "cannot show prejudice because of counsel's alleged deficiency in failing to attack the conviction alleged in the § 851 information.").

## CONCLUSION

For the reasons stated above, Reid's § 2255 Motion is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Reid has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Reid is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court

declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.  In view of this Court's denial of the § 2255 motion (Dkt. # 274), Reid's remaining motions—*i.e.*, his motion to supplement the record (Dkt. # 277),  his motion for the appointment of counsel (Dkt. # 94), and his motion for the appointment of counsel and for an evidentiary hearing (Dkt. # 301)—are each denied as moot.

**IT IS SO ORDERED.**

*s/Richard J. Arcara*
HONORABLE RICHARD J.  ARCARA
SENIOR U.S. DISTRICT JUDGE

Dated:  August 22, 2024
          Buffalo, New York.